## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

DAYLON CARL WALDROP                                            PLAINTIFF

v.                                                    No. 3:24CV311-DAS

SUPT. CHRIS LODEN, ET AL.                                     DEFENDANTS

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Daylon Carl Waldrop

under 42 U.S.C. § 1983. That statute provides a federal cause of action against "[e]very person" who

under color of state authority causes the "deprivation of any rights, privileges, or immunities secured

by the Constitution and laws" of the United States. *Id.* For the purposes of the Prison Litigation

Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit.[1] The plaintiff

alleges that the defendants: (1) improperly found him guilty of several prison rule violations; (2)

exposed him to various unconstitutionally harsh general conditions of confinement; (3) harassed and

strip-searched him during a shakedown of his cell; and (4) conducted generally improper shakedowns.

The defendants have moved [20] for partial summary judgment, seeking dismissal of several

of the plaintiff's claims regarding harsh general conditions of confinement for failure to exhaust

administrative remedies. The plaintiff has not responded to the motion, and the deadline to do so has

expired. The matter is ripe for resolution. For the reasons set forth below, the defendants' motion [20]

for partial summary judgment will be granted, and the following allegations will be dismissed without

prejudice for failure to exhaust administrative remedies: (1) placement in lockdown 24 hours per day;

---

[1] *See* 42 U.S.C. § 1997e(a); *see also Williams v. Henagan*, 595 F.3d 610 (5th Cir. 2010) (PLRA
applies when inmate is incarcerated at the time he files suit, even if he was released during pendency
of suit).

(2) improper shower call; (3) improper yard call; (4) exposure to inmate suicides and the sound of gunshots; and (5) moldy showers.

## Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)).

After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## Undisputed Material Facts[2, 3]

The plaintiff's allegations involve incidents at both the Marshall County Correctional Facility ("MCCF"), and the Walnut Grove Correctional Facility ("WGCF").

### MCCF Events

The plaintiff alleges that, while he was housed at MCCF in Holly Springs, Mississippi, the

---

[2] In the interest of completeness, the court has summarized all of the plaintiff's allegations in this case – both the allegations arising from his stay at MCCF and at WGCF. The court will, however, discuss only the issue of exhaustion as to several allegations arising out of his stay at WGCF, as this is the subject of the defendants' motion for summary judgment.

[3] For the purposes of this memorandum opinion and judgment only, the court will accept the plaintiff's allegations as true, unless they are contradicted by clear documentary evidence:

> Indeed, "[Rule 56] is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary."

Advisory Committee Note to the 1963 Amendments to Rule 56.

defendants violated his right to due process in finding him guilty of several prison rule violations.
Doc. 1. Waldrop alleges that on March 12, 2024, guards restrained him, searched his person and
property, and placed him in administrative segregation. *Id.* at p. 8. He claims that he was served a
detention notice, but he was not told why he was placed in administrative segregation. *Id.* He states
that he later received three Rule Violation Reports ("RVRs")—one for criminal gang activity (No.
2077889) and two for the possession of major contraband (Nos. 2077595 and 2077597). *Id.* He
argues that the RVRs did not list "specific acts" or "circumstances and details." *Id.*

Waldrop later attended a detention hearing, during which officers gave statements regarding
the bases of the RVRs – and presented the evidence obtained during their investigation. *Id.* at 9.
Waldrop, however, challenges the investigative process, *id.*, arguing that the evidence adduced was
insufficient to find him guilty of the three RVRs. *Id* at 9-14. As a result of guilty findings, Waldrop
was transferred from MCCF to WGCF. *Id.* at 13. The court will address these allegations in a
separate show cause order.

### WGCF Events

Waldrop alleges that, during his stay at WGCF, the defendants violated the Eighth
Amendment prohibition against cruel and unusual punishment by subjecting him to harsh general
conditions of confinement: (1) lockdown 24 hours per day, (2) improper shower call, (3) improper
yard call, (4) exposure to inmate suicide and the sound of gunshots, and (5) moldy showers. Doc. 1, p.
13. He also alleges that, while at WGCF, he was harassed and strip-searched, and the defendants
conducted improper shakedowns of his cell. *Id.*

### Exhaustion of Administrative Remedies

The defendants argue that the plaintiff did not exhaust his administrative remedies as to five of
the allegations involving his stay at WGCF: (1) placement in lockdown 24 hours per day; (2)

improper shower call; (3) improper yard call; (4) exposure to inmate suicides and the sound of gunshots; and (5) moldy showers. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires prisoners to exhaust any available administrative remedies before filing suit under 42 U.S.C. §1983. Congress meant for the exhaustion requirement to be a tool to help weed out the frivolous claims from the colorable ones. *Jones v. Bock*, 549 U.S. 199, 203 (2007).

The exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81, 89 (2006). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "*proper* exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006) (emphasis added); *see also Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement)(*citing Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty. Med. Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11, 2008)( under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules"). Indeed, "a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process." *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The requirement that the plaintiff exhaust his claims prior to the filing of a lawsuit is mandatory. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir. 2012). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). As "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual

disputes concerning exhaustion without the participation of a jury." *Id.* at 272. A prisoner should face a significant consequence for deviating from the prison grievance procedural rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford* at 95.

Mississippi Code Annotated § 47-5-801 grants the Mississippi Department of Corrections the authority to adopt an administrative review procedure at each of its correctional facilities. The Mississippi Department of Corrections has thus set up an Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a complaint or grievance relating to any aspect of his incarceration. This court approved the ARP Program in *Gates v. Collier*, GC 71-6-S-D (N.D. Miss. Feb. 15, 1994). *See also Marshall v. Price*, 239 F.3d 365, 2000 WL 1741549, at *1 (5th Cir. 2000). An inmate must complete two steps to exhaust the ARP process.[4] *See Gates v. Barbour*, No. 4:71CV6-JAD, Doc. 1242 (N.D. Miss. Aug. 19, 2010); *Threadgill v. Moore*, No. 3:10CV378-TSL-MTP, 2011 WL 4388832, at *3 n.6 (S.D. Miss. July 25, 2011).

The inmate may initiate the two-step ARP grievance process by submitting his allegations in writing to the prison's Legal Claims Adjudicator within thirty days of the incident. *Howard v. Epps*, No. 5:12CV61-KS-MTP, 2013 WL 2367880, at *2 (S.D. Miss. May 29, 2013). The Adjudicator initially screens the complaint and determines whether or not to accept it into the ARP process as a

---

[4] If an inmate is found guilty of a prison rule violation, he may appeal that finding through the ARP process. Inmate Handbook, Section VIII, Paragraph XI. However, the appeal of a rule violation through the ARP is a one-step process (in contrast to the two-step process for resolving grievances). *Id.*

grievance. *Id.* The screening phase thus operates as a filter – applied before the formal grievance process begins – to remove procedurally defective or otherwise invalid grievances. As set forth above, a prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective grievance or appeal. *Woodford, supra.*

Hence, rejection of a grievance during the screening phase terminates the grievance – and does *not* count as exhaustion of the grievance process. *See Seales v. Shaw*, No. 5:15-CV-59-KS-MTP, 2016 WL 616749, at *3 (S.D. Miss. Jan. 26, 2016), *report and recommendation adopted sub nom. Seales v. Wilkinson Cty. Corr. Facility*, No. 5:15-CV59-KS-MTP, 2016 WL 616385 (S.D. Miss. Feb. 16, 2016) (finding rejection during initial MDOC screening process not to constitute exhaustion); *Goldmon v. Epps*, No. 4:14-CV-0112-SA-SAA, 2015 WL 5022087, at *3 (N.D. Miss. Aug. 24, 2015) (same); *see also Robinson v. Wheeler*, 338 Fed. Appx. 437 (5th Cir. 2009) (per curiam) (not reported) (upholding Louisiana initial screening provision of prison grievance process). However, if the defects in the original grievance were minor ("technical" or "matters of form") an inmate may submit a corrected grievance within five days of the rejection:

> If a request is rejected for technical reasons or matters of form, the inmate shall have five days from the date of rejection to file his/her corrected grievance.

*See* https://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf (last visited April 3, 2019)).

If accepted as a valid grievance, the complaint is forwarded to the appropriate official who then issues a First Step Response to the complaining inmate.[5] *Id.* If the inmate is unsatisfied with the First Step Response, he may continue to the Second Step by completing the appropriate ARP form and

---

[5] The submission and screening of the plaintiff's complaints do not constitute the beginning of the ARP process. Instead, the ARP grievance process begins when the inmate's submission is "accepted" as a grievance *after* initial screening. Inmate Handbook, Chapter VIII, Paragraph IV(H).

sending it to the Legal Claims Adjudicator. *Id.* The Superintendent, Warden, or Community Corrections Director will then issue a final ruling (the Second Step Response) – which completes the ARP process.[6] *Id.* If the inmate is unsatisfied with that response, he may file suit in state or federal court. *Id.*

**The Plaintiff Failed to Exhaust the Grievance
Process as to Five WGCF Allegations**

Based on Waldrop's ARP records, before the filing of his complaint, he filed two grievances while incarcerated at WGCF – neither of which involve the five conditions at WGCF at issue in the instant motion. Ex. B, Plaintiff's ARP File Excerpt.[7] *Id.* at 66, 77. Waldrop filed one grievance at WGCF on July 3, 2024, appealing prison rule violation, alleging administrative and investigative errors. *Id.* at 66. He filed another grievance at WGCF on August 23, 2024, appealing a different rule violation – again alleging administrative and investigative errors. *Id.* at p. 77.

The plaintiff did not file a grievance as to any of these allegations: (1) placement in lockdown 24 hours per day; (2) improper shower call; (3) improper yard call; (4) exposure to inmate suicides and the sound of gunshots; and (5) moldy showers. As such, these five allegations must be dismissed without prejudice for failure to exhaust administrative remedies.

---

[6] The grievance process will also be deemed complete if more than 90 days elapses from the beginning of the process (acceptance of the grievance after screening) without issuance of a Second Step Response Form (the normal way to complete the grievance process). Inmate Handbook, Chapter VIII, Paragraph VIII(A). In the absence of a response in a step of the ARP process, the inmate may not simply wait for the 90-day deadline to expire. *Id.* Instead, for each step without a response, he must wait until the deadline for a written response for that step expires, then move to the next step in the process. *Id.* If the inmate has submitted the proper forms for each step, yet 90 days elapses without issuance of a Second Step Response Form, then he has completed the grievance process and may then seek relief in State or Federal court.

[7] The exhibits referenced in this memorandum opinion may be found attached to the defendants' Motion for Summary Judgment.

**Conclusion**

For the reasons set forth above, the motion [20] by the defendants for partial summary judgment will be granted.  The plaintiff's allegations regarding the following five issues will be dismissed without prejudice for failure to exhaust administrative remedies:  (1) placement in lockdown 24 hours per day; (2) improper shower call; (3) improper yard call; (4) exposure to inmate suicides and the sound of gunshots; and (5) moldy showers.  The remaining claims will be addressed in a separately issued show cause order.  A judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 30th day of May, 2025.

/s/   David A. Sanders
UNITED STATES MAGISTRATE JUDGE